# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARI ANN HUNNICUTT, as the Personal Representative of the Estate of Muriel Dean Taylor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 10-CV-708-TCK-TLW ) |
| ZENECA, INC., and STAUFFER MANAGEMENT COMPANY, | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Before the Court are Defendant Stauffer Management Company LLC's Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 33); Defendant Zeneca, Inc.'s Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 34) ("Motions to Dismiss"); Stauffer Management Company LLC and Zeneca, Inc.'s Motion to Certify Question of Law to the Supreme Court of Oklahoma (Doc. 35); and Stauffer Management Company LLC and Zeneca, Inc.'s Motion for Protective Order Staying Discovery Pending Rulings on Their Dispositive Motions (Doc. 55).

## I.  Factual Background[1]

Dean Taylor ("Taylor") was employed by Defendant Stauffer Management Company, LLC ("Stauffer") at its Compton, California plant from September 21, 1959 until his retirement on July 31, 1985. In 1985, shortly following his retirement, Taylor moved to Oklahoma, where he resided

---

[1] The Motions to Dismiss must be converted to motions for summary judgment. *See infra* Part III. Therefore, the following facts are based upon the entire record and not merely the allegations in the First Amended Complaint. The facts are construed in a light most favorable to Plaintiff.

until his death. On March 10, 1988, while Taylor was living in Oklahoma and after Taylor's retirement, Stauffer purchased an Increasing Death Benefit Whole Life Insurance Policy ("MB029 Policy") from Mutual Benefit Life Insurance Company, which insured Taylor's life.[2] Upon Taylor's death, Stauffer allegedly collected proceeds under the MB029 Policy.

On June 6, 2011, Plaintiff Dari Ann Hunnicutt ("Plaintiff"), as the personal representative of Taylor's estate, filed a First Amended Complaint against a group of six companies she referred to as the "AstraZeneca group." In the First Amended Complaint, Plaintiff alleged that the AstraZeneca group purchased an illegal COLI policy[3] on the life of Taylor and that she is entitled to any benefits collected by members of the AstraZeneca group upon Taylor's death. Plaintiff alleges that such policy is illegal under the following provision of the Oklahoma Insurance Code:

> § 3604. Insurable interest with respect to personal insurance
> A. 1. . . . [N]o person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under the contract are payable to the individual insured or a personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the individual insured.
> . . .
> B. If the beneficiary . . . under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disability, or injury of the individual insured, the individual insured or an executor or administrator, as the case may be, may maintain an action to recover such benefits from the person receiving them.

Okla. Stat. tit. 36, § 3604 ("§ 3604"). Specifically, Plaintiff alleged that the AstraZeneca group did not have an "insurable interest" in Taylor's life. Plaintiff also alleges that the policy was illegally

---

[2] The MB029 Policy is of a type commonly referred to as corporate-owned life insurance policy or "COLI." *See Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1304 (10th Cir. 2005) (explaining COLIs and their purpose).

[3] The First Amended Complaint did not specifically identify the policy by number.

obtained because Taylor did not apply for or consent to the life insurance policy. *See* Okla. Stat. tit. 36, § 3607 (explaining that, except in certain circumstances involving group insurance, spouses, minors, and incompetent persons, the insured individual must apply for the insurance contract or consent thereto). Plaintiff seeks to certify a class of similarly situated estates of deceased individuals upon whose lives the AstraZeneca group illegally obtained insurance policies and then collected proceeds upon their deaths. Plaintiff alleges that recovery is available under the laws of eleven other states and seeks a class definition inclusive of plaintiffs from such states.

At some time prior to August 12, 2011, the parties entered into a stipulation ("Stipulation"), which represented a "compromise" on certain issues. (*See* Pl.'s Resp. to Defs.' Mots. to Dismiss., at Ex. D.) The parties stipulated that Plaintiff "seeks to recover the benefits paid under certain policies of corporate-owned life insurance, namely the MB029-XXXX and MB030-XXXX policies." (*Id.*)[4] Defendant Stauffer Management Company ("Stauffer") represented and warranted that "it was the purchaser of the [MB029 Policy] and has not transferred any proceeds which may have been realized from such policy to any other entity." (*Id.*) Defendant Zeneca, Inc. ("Zeneca") represented that "it was the corporate successor to ICI Americas, Inc., the purchaser of the [MB030 Policy] and has not transferred any proceeds which may have been realized from such policy to any other entity." (*Id.*) Plaintiff agreed to voluntarily dismiss all Defendants except Stauffer and Zeneca.

On July 27, 2011, Stauffer and Zeneca ("Defendants") filed identical motions to dismiss ("Motions to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Defendants also filed a motion seeking certification of a question of law to the Oklahoma Supreme

---

[4] The Court refers to such policies as the MB029 Policy and the MB030 Policy.

Court ("Motion to Certify"). On August 12, 2011, Plaintiff filed a Notice of Dismissal of certain Defendants, attaching the Stipulation as Exhibit A.[5]

## II. Motion to Certify

The Oklahoma Insurance Code, including those provisions relevant to Plaintiff's allegations in this case, does not apply to any life insurance "[p]olicies or contracts not issued for delivery in Oklahoma nor delivered in Oklahoma." Okla. Stat. tit. 36, § 3601(2). Assuming Oklahoma law applies to this matter,[6] Defendants dispute whether any relevant life insurance policies were issued for delivery or delivered in Oklahoma, as required by Okla. Stat. tit. 36, § 3601(2). (*See* Defs.' Mots. to Dismiss, at Proposition III ("delivery argument").) Defendants seek to certify the following question to the Oklahoma Supreme Court:

> Under Oklahoma law, does the filing by an insurance company of a generic life insurance policy form with the Oklahoma Insurance Department, as required by Okla. Stat. tit. 36, § 3610(A), constitute, as a matter of law, the "delivery" in the State of Oklahoma of all insurance policies or contracts which include that form, no matter where the policies or contracts were issued or received?

(Defs.' Mot. to Certify 2.) For reasons explained *infra* Part V.B, the Court rejects Defendants' choice of law argument. The Court must therefore determine whether it will certify the above question prior to resolving Defendants' delivery argument.

---

[5] AstraZeneca, PLC ("AZ PLC") was not listed as a voluntarily dismissed party in Plaintiff's August 15, 2011 Notice of Dismissal, (*see* Doc. 45), and therefore was not terminated as a party by the Court Clerk. However, it appears that this was an oversight and that Plaintiff intended to dismiss AZ PLC at that time. (*See* Ex. A to Doc. 45 (stating that Stauffer and Zeneca were only remaining defendants); Doc. 49 (listing AZ PLC as dismissed party and stating that Stauffer and Zeneca were only two remaining defendants).) The Court construes Ex. A to Doc. 45 and Doc. 49 as Plaintiffs' notice of voluntary dismissal of AZ PLC and will direct the Clerk's Office to terminate AZ PLC as a defendant.

[6] Defendants dispute whether Oklahoma law or California law applies. (*See* Defs.' Mots. to Dismiss, at Proposition II ("choice of law argument").)

4

"Under Oklahoma law, the Oklahoma Supreme Court has the power to answer a question certified to it by any federal court 'if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.'" *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (quoting Okla. Stat. tit. 20, § 1602). Federal courts generally "do not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks," and courts should apply "judgment and restraint before certifying." *Id.* Certification is nonetheless appropriate where the question "(1) may be determinative of the case at hand and (2) is sufficiently novel that [a court] feel[s] uncomfortable attempting to decide it without further guidance." *Id.* Courts should also seek to "give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts." *Id.* The decision of whether to certify a state question is within the discretion of the federal court. *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008).

The Court declines to certify the above question for three reasons. First, the Tenth Circuit Court of Appeals has already predicted the Oklahoma Supreme Court's answer to such question. *See Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1304 (10th Cir. 2005) ("*Tillman II* ") (holding that a COLI policy was "constructively delivered" in Oklahoma by virtue of insurer's prior filing of generic form policy with Oklahoma Department of Insurance, where actual policy was never delivered to anyone but was instead stored electronically in a different state). Second, a court in this district has applied and followed the *Tillman II* decision. *See Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-944-CVE, 2005 WL 3263377, at * 18 (N.D. Okla. Dec. 1, 2005) (finding *Tillman* dispositive of delivery argument because insurer had filed form COLI policy with

5

Oklahoma Department of Insurance). Third, this Court predicts that the Oklahoma Supreme Court would concur with *Tillman II* and *Lewis*'s reasoning that "interpreting the statute to require physical delivery of the contract within state borders would allow all insurance companies to skirt Oklahoma insurance regulations merely by electronically storing the insurance contracts in another jurisdiction." *Tillman II*, 408 F.3d at 1304; *Lewis*, 2005 WL 3263377, at * 19. The Tenth Circuit's holding furthers Oklahoma's interest in applying its laws, rather than foreign laws, to insurance contracts insuring Oklahoma citizens. Therefore, certification is unwarranted and unnecessary under the circumstances.

### III.     Conversion of Motions to Dismiss

A motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings. *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007) (internal quotations omitted). Prior to the district court's ruling on a converted motion, all parties must be given a reasonable opportunity to present relevant material. *See* Fed. R. Civ. P. 12(c).

Here, Defendants attached evidence that is not referred to or "central" to the First Amended Complaint. Specifically, the Motions to Dismiss rely upon the Certification of Glenn M. Engelmann ("Engelmann Certification"). (*See* Mots. to Dismiss at n. 2 (referencing and incorporating exhibits attached to a prior motion to dismiss).) The Engelmann Certification contains averments regarding

the dates of Taylor's employment and an unfruitful search for Taylor's name on the MB030 Policy. In her response brief, Plaintiff set forth the summary judgment standard and attached additional responsive evidence outside the pleadings, including two Declarations and the Stipulation. Based on its consideration of this outside evidence, the Court converts the Motions to Dismiss to ones for summary judgment. The Court finds that all parties had notice and a reasonable opportunity to present evidence pertinent to the motion. *See Alexander v. Okla.*, 382 F.3d 1206, 1214-15 (10th Cir. 2004) (holding that a plaintiff had sufficient notice and opportunity to be heard where the defendant filed in the alternative, the plaintiffs addressed the summary judgment standard in their response to that motion, and the plaintiffs attached their own evidence).

## IV.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## V. Converted Motions for Summary Judgment

Defendants make four arguments in support of dismissal and/or summary adjudication: (1) the First Amended Complaint's reference to the "AstraZeneca group" is too vague to state a claim for relief against Stauffer and Zeneca; (2) Plaintiff's claims are governed by California law, and California has no provision similar to § 3604; (3) neither of the Policies were actually or constructively delivered in Oklahoma; and (4) Taylor was never employed by ICI Americas, Inc. ("ICI"), Zeneca's predecessor, and therefore Plaintiff has no cognizable claim related to the MB030 Policy.

### A. Lack of Specificity Regarding Defendants

Defendants argue that "Plaintiff's conclusory and generic allegations about the actions of an entire corporate family, comprised of separate and distinct legal entities, without any specific factual allegations of conduct undertaken by [Stauffer and Zeneca]" fail to state a claim . . . ." (Stauffer's Mot. to Dismiss 7; Zeneca's Mot. to Dismiss 7.) Since the filing of the First Amended Complaint, the parties have entered into a Stipulation that (1) Plaintiff seeks to recover, on behalf of herself and others similarly situated, proceeds paid pursuant to two specific policies, the MB029 Policy and MB030 Policy; (2) Stauffer purchased the MB029 Policy and has not transferred any proceeds which may have been realized from such policy to any other entity, and (3) ICI, Zeneca's predecessor, purchased the MB030 Policy and has not transferred any proceeds which may have been realized from such policy to any other entity. Plaintiff dismissed all other Defendants. Under these circumstances, there are no notice or specificity problems caused by the First Amended Complaint's reference to the "AstraZeneca group." At this juncture in the litigation, the general term "AstraZeneca group" has effectively been amended to refer to Stauffer and Zeneca. Read in

this manner, the First Amended Complaint provides specific and detailed allegations regarding how and why these particular Defendants violated the Oklahoma Insurance Code. Defendants' attempt to argue that they somehow lack notice of the specific allegations against them is entirely unavailing in light of the dismissal of the remaining Defendants and the Stipulation. *Cf. BanxCorp v. LendingTree, LLC*, No. 10-2467, 2011 WL 541807, at *7 (D.N.J. Feb. 7, 2011) (dismissing certain defendants where the plaintiff had used the global terms "defendants" and "cartel" to apply to numerous parties without any specific allegations that would tie each particular defendant to the alleged conspiracy).

### B. Choice of Law

In a diversity action, the federal district court applies the substantive law of the forum state, including its choice of law rules. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010). Oklahoma state courts have not decided the choice of law question in the specific context of a cause of action to collect illegally held insurance proceeds pursuant to § 3604. Oklahoma federal courts have held, applying Oklahoma choice of law principles, that Oklahoma law applies to causes of action arising under § 3604, rather than the law of the state in which the life insurance contract was formed between the insurance company and the employer. *See Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-944-CVE, 2005 WL 3263377, at * 1 (N.D. Okla. Dec. 1, 2005) (concluding that Oklahoma law applied in case arising under § 3604); *Tillman v. Lewis*, 2003 U.S. Dist. Lexis 21662, at ** 10-20 (N.D. Okla. Sept. 29, 2003) ("*Tillman I*") (declining to apply conflict of laws analysis applicable to contracts and instead relying upon various other restatement provisions in concluding that Oklahoma law applied); *rev'd on other grounds*, *Tillman II*, 408 F.3d 1300 (implicitly affirming choice of law ruling); s*ee also Mayo v. Hartford Life Ins. Co.*, 354 F.3d

9

400, 406 (5th Cir. 2004) (affirming district court's application of Texas law, rather than law of state where insurance contract was formed, in case arising under Texas' common-law equivalent to § 3604). Although these courts rejected any test based exclusively on the site of formation of the life insurance policy, they did not adopt a test or set of specific factors to consider in cases arising under § 3604 or other claims based upon the insurable interest doctrine. This unique cause of action, which has certain ties to contract law, tort law, and equitable doctrines, resists simple application to the Restatement (Second) of Conflicts' ("Restatement") provisions governing specific types of disputes. *See Mayo*, 354 F.3d at 404 (explaining that the Restatement "does not provide an analytical schema for determining insurable interest claims" and then discussing various sections of the Restatement that were of "potential relevance"); *Tillman I,* 2003 U.S. Dist. Lexis 21662, at * 10-20 (relying upon Restatement §§ 6,[7] 188 (governing contract disputes), 192 (governing life insurance policies issued to the insured), and 221 (governing unjust enrichment)); *Tillman II*, 408 F.3d at 1303-04 (appearing to hold, without specific discussion, that Oklahoma law applied because constructive delivery of the contract occurred in Oklahoma); *Lewis*, 2005 WL 3263377, at * 20

---

[7] Section 6 is the overarching analysis applicable to any choice of law dispute. *See Mayo*, 354 F.3d at 404. Section 6 provides that, when there is no statutory directive in the state law of the forum, the following factors are relevant to the choice of law analysis:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts § 6.

(concluding that Oklahoma law applied based on constructive delivery of contract there and other specific facts, including where the employment relationship was centered and where the decedent lived, worked, and died).

In this case, Defendants do not argue that California law applies because California is the site of formation of the insurance contract, as did the defendants in *Tillman I*, *Lewis*, and *Mayo*. Instead, Defendants argue that, even under the these precedents, California law governs the dispute due to a key factual difference presented in this case – namely, Taylor was employed by Stauffer exclusively in California rather than Oklahoma.[8] Based on the principles and factors explained in prior case law addressing this issue, the Court concludes that Oklahoma law governs the dispute. First, Plaintiff's claim centers on an alleged violation of Oklahoma law, and Oklahoma's interest in seeing its policy correctly applied far outweighs any other relevant choice of law factors. *See Mayo*, 354 F.3d at 404 ("Texas' interest in seeing its policy correctly applied far outweighs any other consideration."); *Tillman I*, 2003 U.S. Dist. Lexis 21662, at * 18 ("Plaintiff has alleged a violation of Oklahoma statute, not an Ohio statute or Georgia statute. There is no reason for this Court to believe that Ohio or Georgia has a greater interest in the determination of whether [the employer] has an insurable interest in the lives of Oklahomans."). Second, although Taylor's entire employment relationship with Stauffer occurred in California, the crucial events relevant to § 3604 are the purchase of the allegedly illegal policy and collection upon the allegedly illegal policy. At both of these crucial times, Taylor was an Oklahoma resident. The policies that Oklahoma's statute seeks to protect – namely, the prevention of life insurance policies insuring Oklahoma residents by

---

[8] In all cases cited above, the employee worked, lived, and died in the state whose laws were found to govern the dispute.

entities with no insurable interest in the life of such residents - are directly applicable to Taylor even though his employment relationship took place in California. Finally, Oklahoma has a more significant relationship than California to the "subject matters" of this dispute, which are Taylor's life and the statutes designed to protect Taylor's family in the event of collection of illegally obtained life insurance proceeds. *See Tillman I*, 2003 U.S. Dist. Lexis 21662, at * 19 (defining subject matter of dispute as "life of the insured and statute designed to protect it"). There is no question that Oklahoma's interests are more "deeply affected" by this dispute than California's interests. *See* Restatement § 6 ("The forum should also appraise the relative interests of the states involved in the determination of the particular issue. In general, it is fitting that the state whose interests are most deeply affected should have its local law applied."). Therefore, the Court concludes that Oklahoma law – and not California law – governs Plaintiff's claim.

**C.  Delivery**

In the event the Court declines to certify the delivery question to the Oklahoma Supreme Court, Defendants move the Court to reach a different conclusion than *Tillman I*, *Tillman II*, and *Lewis*. Specifically, Defendants argue that Plaintiff's filing of a generic COLI policy form with the Oklahoma Department of Insurance in 1986 (two years prior to issuance of the MB029 or MB030 Policies) is insufficient to effectuate constructive delivery in Oklahoma. (*See* Stauffer's Mot. to Dismiss 12-21 (arguing that the Tenth Circuit in *Tillman II* "appears to have not considered the distinction established by the Oklahoma Legislature between insurance policy forms and insurance policies or contracts"). However, the Court finds *Tillman II* to be well-reasoned precedent, and the Court finds no meaningful differences in the facts alleged here and the facts explained in *Tillman*

12

II. Accordingly, Defendant is not entitled to summary adjudication based on Plaintiff's inability to demonstrate the delivery requirement under Oklahoma law.

### D. Standing - MB030 Policy

Defendants argue that Plaintiff lacks standing to pursue any claims related to the MB030 Policy because Taylor's life was not insured by such policy.[9] Plaintiff concedes that she does not seek any proceeds obtained under the MB030 Policy and held by Zeneca but argues that: (1) Plaintiff has alleged a common scheme between Stauffer and Zeneca to illegally profit from insurance policies and that "[i]t is of no moment which group member [Zeneca or Stauffer] was designated as the nominal beneficiary because the claim against the group [Zeneca and Stauffer] is the same," (Pl.'s Resp. to Defs.' Mots. to Dismiss 15); (2) the two policies are identical in that they are the same COLI policy form, and the applications for each policy were signed the same date and by the same individual on behalf of both Stauffer and Zeneca; and (3) Defendants' motion is "actually a challenge to class certification (i.e., the Taylor estate's adequacy and typicality or the commonality of the class claims)," (*id.* 16.).

The parties offered only a few pages of briefing and minimal citations to case law in support of and in opposition to Defendants' standing argument. At this juncture in the litigation, the record reveals that the case is about two policies and two defendants that recovered proceeds under such policies. The question is whether Plaintiff has standing to pursue claims against Zeneca, a separate entity from Stauffer that does not appear to have received any proceeds from an illegal insurance

---

[9] Defendants first used the phrase "standing" in their reply brief and couched their initial motion in terms of Plaintiff's "failure to state a claim" against Zeneca.

contract on Taylor's life. *See* Okla. Stat. tit. 36, § 3604(B) (insured or insured's estate "may maintain an action to recover such benefits from the person receiving them").

Based on the Court's initial research, Defendants' standing argument raises questions that are not adequately briefed. The Tenth Circuit appears to require courts to address standing prior to addressing class certification. *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole – that unnamed plaintiffs might have a case or controversy is irrelevant."); *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003) (holding that no named plaintiff had standing to bring certain claims and remanding for decertification as to such claims); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at * 7 (D. Colo. July 14, 2011) (declining to defer standing ruling until after class certification rulings); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1225 (W.D. Okla. 2008) ("Plaintiffs have not persuaded the court that traditional rules requiring determination of Article III standing issues before class certification issues should not be followed here."). But there exists authority holding that, in some cases, class certification questions are "logically antecedent" to standing. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). There also exists authority holding that class certification questions *must* be decided before standing questions. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir 2002) ("We understand *Ortiz* to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs.").

In addition, there appear to be exceptions to traditional standing requirements in class action cases involving multiple defendants:

> Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members.
> . . .
> Some courts have applied the juridical link doctrine to standing and have allowed class actions to proceed against defendants who injured none of the named plaintiffs when those defendants allegedly caused similar injuries to unnamed class members, and it would be expeditious to resolve the entire dispute in one lawsuit.

William B. Rubenstein, *Newberg on Class Actions* § 2:5 (addressing standing in class actions involving multiple defendants); *see also id.* § 3:49 (addressing Rule 23(a)(3) test for typicality when the complaint names one or more defendants with whom the named plaintiff has no contact). This authority is not exhaustive and is intended as a starting point for the supplemental briefing ordered below.

The Court orders additional briefing as follows. Defendants shall file a joint supplemental motion for summary judgment no later than February 10, 2012 addressing: (1) the proper order of consideration of standing and class certification issues; (2) whether Plaintiff has standing to pursue claims against Stauffer related to the MB030 Policy; (3) whether Plaintiff has standing to pursue any claims against Zeneca; and (4) any other arguments related to standing. Plaintiff shall respond no later than February 27, 2012, and Defendants shall file a reply no later than March 9, 2011. The parties shall make all relevant standing arguments and shall present all evidence relevant to the Court's standing inquiry.

## VI. Conclusion

Defendants' Motions to Dismiss (Docs. 33, 34), which were converted to motions for summary judgment, are DENIED. Defendants' Motion to Certify (Doc. 35) is DENIED.

Defendants' Motion for Protective Order Staying Discovery Pending Rulings on Their Dispositive Motions (Doc. 55) is GRANTED, pending the Court's ruling on the supplemental motion for summary judgment. If and to the extent discovery is needed regarding the supplemental briefing on standing, the parties must move for such discovery. The Court Clerk is directed to terminate Defendant AstraZeneca PLC as a Defendant. *See supra* n.5. Defendants shall not be precluded from filing an additional motion for summary judgment during later stages of the proceedings.

SO ORDERED this 13th day of January, 2012.

*[signature]*

TERENCE C. KERN
United States District Judge